**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**CANBERRELA KAY COOLEY,**

      **Plaintiff,**

**v.**                                                       **Civil Action No. 2:10CV76**
                                                       **(The Honorable John Preston Bailey)**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

      **Defendant.**

**REPORT AND RECOMMENDATION/OPINION**

This is an action for judicial review of the final decision of the Defendant, Commissioner of the Social Security Administration ("Defendant," and sometimes "Commissioner"), denying the Plaintiff's claim for supplemental security income benefits ("SSI") under Title XVI of the Social Security Act. The matter is awaiting decision on cross motions for summary judgment and has been referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommended disposition. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); L.R. Gen. P. 86.02.

**I. PROCEDURAL HISTORY**

Canberrela Kay Cooley ("Plaintiff"), protectively filed her application for SSI benefits on June 28, 2006, alleging disability since January 2, 2004, due to four deteriorated discs in her back, post traumatic stress, anxiety, and Major Depressive Disorder (R. 117, 125). Her claim was denied initially and on reconsideration (R. 58, 59). At Plaintiff's request, an administrative hearing was

conducted by Norma Cannon, Administrative Law Judge ("ALJ"), on June 18, 2008, and at which Plaintiff; Ralena Dawn Nicholson, a witness; and Larry Ostrowski, a Vocational Expert ("VE"), testified (R. 25-57). On July 14, 2008, the ALJ issued a decision finding that Plaintiff could perform a range of light work and, therefore, was not disabled within the meaning of the Act (R. 23-24). Subsequent to the decision by the ALJ, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (R. 1-5).

## II. FACTS

Plaintiff was born on April 10, 1972 and was thirty-six (36) years old at the time of the administrative hearing (R. 25, 108). She has an 11th grade education and special job training as an emergency dispatcher (R. 30, 123). Her past relevant work was that of 911 dispatcher and telemarketer (R. 118). Plaintiff listed employment at McDonalds as a management trainee, reporting she used cash registers and food equipment, but she did not manage people (R. 145).

There is no dispute by Plaintiff as to the medical evidence in this case or the ALJ's evaluation thereof. The Plaintiff did not assert that the ALJ's findings were not supported by substantial evidence. Plaintiff did not dispute the ALJ's finding as to her residual functional capacity. Plaintiff's only argument is that the jobs identified by the VE as being jobs Plaintiff can perform are not "responsive to the limitations found by the" ALJ (Plaintiff's brief at p. 12). The undersigned, therefore, does not include the medical evidence in this report and recommendation.

<u>Vocational Expert Testimony</u>

At the administrative hearing, the VE testified he had reviewed Plaintiff's file. The VE stated he was "familiar with the <u>Dictionary of Occupational Titles</u>" (R. 48). When asked by the ALJ to explain the <u>Dictionary of Occupational Titles</u> and how he utilized it in his work, the VE

2

testified as follows:

> An important issue in this process is for the Judge to understand essentially what it takes to do the jobs you've done in the past, and also, to understand how the job is classified according to how much weight needs to be lifted, and carried, and moved, and what kind of skills a person needs to have to do the jobs, and what kinds of skills a person may have developed by doing the jobs. And she'll have questions about work, jobs that exist in the economy today. And what – the basis for all the questions and that would be a reference that was developed by the federal government called the <u>Dictionary of Occupational Titles</u>, which contains the, first of all, the names, and then, the description of 12,343 jobs that exist in the economy, and the jobs are described in a number of ways. And by virtue of the fact that I've worked as a rehabilitation counselor throughout my lifetime – my career, helping people who have been injured or born with disabilities get jobs. I'm familiar with the <u>Dictionary of Occupational Titles</u>, so I'll answer questions she may have in that regard. I'm also asked to define the local economy as to where individuals where you reside get jobs, and I'll define that as a percentage of all the jobs in the state of West Virginia, and I'll define that as 20 percent of all jobs as defined by the Bureau of Labor Statistics (R. 48-49).

The VE characterized Plaintiff's past relevant work as follows:

> . . . . As she indicated, she worked, in effect, what (sic) would call a 9-1-1 dispatcher. She did that for approximately five years. That job, according to the <u>DOT</u>, would be telecommunicator, and it's classified as sedentary and skilled. She has worked as a telephone telemarketer, essentially. That job, according to the <u>DOT</u>, is telephone solicitor, which is classified as sedentary and semiskilled. The – and the review of the file indicated that she has worked as a waitress on a couple of occasions. That work, according to the <u>DOT</u>, is waitress, light and semiskilled. And she indicated – the file – a review of the file indicated that she worked as a fast food worker, and that work, according to the <u>DOT</u>, is light and unskilled. I believe that covers all the work she's done in the past, Your Honor (R. 49-50).

The ALJ asked the VE the following hypothetical question:

> If you would assume the following hypothetical, please: a person is the claimant's age, education, background, and work experience, who could do a range of light work with occasional posturals; no climbing of ropes, ladders, or scaffolds; no balancing required; needs to avoid extremes of temperature, both heat and cold, wetness, humidity, fumes, dust, odors, and gasses, such as – and noxious odors such as that; and needs to avoid hazards such as dangerous moving machinery and unprotected heights; also needs an entry-level job, unskilled, routine and repetitive work, no production line type work, working with things rather than people, limited contact with the public, limited contact with coworkers as well as supervisors, and

3

nothing that requires intense concentration at all times. Could that hypothetical person perform the claimant's prior relevant work? I'm sorry, I forgot to add a sit/stand option (R. 50).

The VE testified Plaintiff could not perform her past relevant work (R. 50).

The ALJ asked if there were any "occupations in the economy at the light or sedentary level that such a hypothetical person could perform?" (R. 50).

The VE found there were jobs at the light level that Plaintiff could perform, testifying as follows:

> Yes, Your Honor . . . . There would be the work of officer helper. In the local economy, there are 127 jobs; in the national economy, 162,282 jobs. . . . There would be the work of a mail clerk. That would be an individual working in a mail room in a private business, as opposed to working for the Postal Service (sic). There are 86 jobs in the local economy, 82,490 jobs in the national economy. There would be the work of a sewing machine operator. In the local economy, there are 90 jobs; in the national economy, 118,906 jobs (R. 50-51).

As to jobs at the sedentary level that Plaintiff could perform, the VE testified as follows:

> At the sedentary level, there would be the work of a document preparer. In the local economy, there are 67 jobs; in the national economy, 62,756 jobs. There would be the work of a table worker. In the local economy, there are 13 jobs; in the national economy, 14,749 jobs. Also, at the sedentary level, there would be the work of an ampoule sealer. In the local economy, there are eight jobs; in the national economy, 13,189 jobs (R. 51).

The ALJ then asked the VE the following question:

> If this hypothetical person were to be off task, whether it's for pain; lack of concentration, persistence, or pace; or for whatever reason, how much time off task might be tolerated by these entry-level employers? (R. 51).

The VE testified that a person could be off task for up to ten percent of a work period and still maintain the "required levels of productivity as required by the employer"(R. 52).

The ALJ asked how much absenteeism would be "tolerated by an entry level employer." The VE stated a person could be absent "perhaps two times a month [] and suffer no consequences as

4

far as maintaining employment" (R. 52).

The ALJ asked the VE if his testimony was consistent with the Dictionary of Occupational Titles. The VE responded as follows:

> Yes, Your Honor, with the exception of the sit/stand option contained in the hypothetical. The sit/stand option is not defined in the Dictionary of Occupational Titles. My opinion regarding a sit/stand option is based on my having performed a job, having formally analyzed the requirements of a job, or having become familiar with how the job is performed otherwise

(R. 52).

### III. ADMINISTRATIVE LAW JUDGE DECISION

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. § 416.920 (1997), ALJ Cannon made the following findings:

1. The claimant has not engaged in substantial gainful activity since June 28, 2006, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).

2. The claimant has the following severe impairments: chronic lumbar strain; status post laminectomy; asthma; recurrent depression; post traumatic stress disorder; adult attention deficit/hyperactivity disorder; and a history of polysubstance abuse (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with an option to sit or stand; performing posturals occasionally, except never balancing or climbing ropes, ladders or scaffolding; avoiding wetness, humidity, fumes, dust, odors, gases, temperature extremes of heat or cold and hazards, such as dangerous moving machinery or unprotected heights; job should be entry level, unskilled, routine, repetitive; working primarily with things, rather than people; limited contact with the public, coworkers and supervisors; and no requirement for intense concentration at all times.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.  The claimant was born on April 10, 1972 and was 34 years old, which is defined as a younger individual, on the date the application was filed (20 CFR 416.963).

7.  The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR 416.960(c) and 416.966).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 28, 2006, the date the application was filed (R. 20 CFR 416.920(g).

(R. 15-24)

## IV. DISCUSSION

### A. Scope of Review

In reviewing an administrative finding of no disability the scope of review is limited to determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990), (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1968)). In reviewing the Secretary's decision, the

reviewing court must also consider whether the administrative law judge applied the proper standards of law: "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

### B. Contentions of the Parties

Plaintiff contends:

1. There is no evidence to support the Commissioner's burden of proving that there are jobs in significant numbers that Plaintiff can do, given her age, education, work experience and residual functional capacity (Plaintiff's brief at p. 10).

The Commissioner contends:

1. Substantial evidence supports the ALJ's finding that Plaintiff could perform a significant number of jobs in the national economy (Defendant's brief at p. 6).

### C. Vocational Expert Testimony

Plaintiff's sole argument is that the ALJ's decision is flawed because none of the jobs identified by the VE is responsive to the limitations found by the ALJ. Plaintiff argues: "Although the vocational expert testified that the description of the jobs he identified was consistent with the descriptions in the Dictionary of Occupational Titles, it was not."

The Social Security Regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. See 20 C.F.R. section 404.1520. The ALJ must consider, in sequence, whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments: (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) is unable to perform his or her past relevant work; and (5) is unable to perform any other work existing in significant

numbers in the national economy.

Here, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. The ALJ then found Plaintiff had the following severe impairments: chronic lumbar strain; status post laminectomy; asthma; recurrent depression; post traumatic stress disorder; adult attention deficit/hyperactivity disorder; and a history of polysubstance abuse (R. 15). The impairments, alone or in combination did not meet or equal a listing. The ALJ found Plaintiff's RFC was as follows:

> [T]he claimant has the residual functional capacity to perform light work . . . with an option to sit or stand; performing posturals occasionally, except never balancing or climbing ropes, ladders or scaffolding; avoiding wetness, humidity, fumes, dust, odors, gases, temperature extremes of heat or cold and hazards, such as dangerous moving machinery or unprotected heights; job should be entry level, unskilled, routine, repetitive; working primarily with things, rather than people; limited contact with the public, coworkers and supervisors; and no requirement for intense concentration at all times (R. 20-21).

The ALJ next found Plaintiff was unable to perform any of her past relevant work because her telecommunications, telephone solicitor, and waitress jobs were skilled or semi-skilled and her past work as a fast food worker required more than occasional contact with the general public and coworkers.

Having found that Plaintiff was unable to perform any of her past relevant work, the burden shifted to the ALJ "to produce evidence that other jobs exist in the national economy that the claimant can perform given h[er] age, education, and work experience." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). The ALJ must consider the claimant's RFC, "age, education, and past work experience to see if s[he] can do other work." 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).

The ALJ may rely on VE testimony to help determine whether other work exists in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1566(e), 416.966(e). The Fourth

Circuit has held that "[t]he purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which the particular claimant can perform." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). When "questioning a vocational expert in a social security disability insurance hearing, the ALJ must propound hypothetical questions to the expert that are based upon a consideration of all relevant evidence of record on the claimant's impairment." English v. Shalala, 10 F.3d 1080, 1085 (4th Cir.1993) (citing Walker v. Bowen, 876 F.2d 1097, 1100 (4th Cir.1989)).

If the ALJ poses a hypothetical question that accurately reflects all of the claimant's limitations, the VE's response thereto is binding on the Commissioner. Edwards v. Bowen, 672 F. Supp. 230, 235 (E.D.N.C. 1987). The reviewing court shall consider whether the hypothetical question "could be viewed as presenting those impairments the claimant alleges." English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993).

> The ALJ in this case asked the VE the following hypothetical question:
>
> If you would assume the following hypothetical, please: a person is the claimant's age, education, background, and work experience, who could do a range of light work with occasional posturals; no climbing of ropes, ladders, or scaffolds; no balancing required; needs to avoid extremes of temperature, both heat and cold, wetness, humidity, fumes, dust, odors, and gasses, such as – and noxious odors such as that; and needs to avoid hazards such as dangerous moving machinery and unprotected heights; also needs an entry-level job, unskilled, routine and repetitive work, no production line type work, working with things rather than people, limited contact with the public, limited contact with coworkers as well as supervisors, and nothing that requires intense concentration at all times. Could that hypothetical person perform the claimant's prior relevant work? I'm sorry, I forgot to add a sit/stand option (R. 50).

Plaintiff does not dispute that the ALJ's hypothetical accurately reflects all of her limitations. The undersigned therefore finds no error in the ALJ's hypothetical to the VE. If the ALJ poses a hypothetical question that accurately reflects all of the claimant's limitations, the VE's response

9

thereto is binding on the Commissioner. Edwards v. Bowen, 672 F. Supp. 230, 235 (E.D.N.C. 1987).

In response to the hypothetical, the vocational expert testified that the individual would be able to perform the requirements of representative occupations such as an office helper (162,282 nationally and 127 within the regional area); a private mail clerk (82,490 nationally and 86 within the regional area); or a sewing machine operator (118,906 nationally and 70 within a regional area). If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. section 404.1567, 416.967. The vocational expert was also able to name a number of jobs with the same residual functional capacity at the sedentary exertional level, so even if the claimant was able to perform work at no more than a sedentary level, she still would not be disabled (R. 23-24).

> Social Security Ruling ("SSR") 00-4p provides, in pertinent part:
>
> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

In this case, the ALJ asked the VE if his testimony was consistent with the Dictionary of Occupational Titles, to which the VE responded:

> Yes, Your Honor, with the exception of the sit/stand option contained in the hypothetical. The sit/stand option is not defined in the Dictionary of Occupational

10

> Titles. My opinion regarding a sit/stand option is based on my having performed a job, having formally analyzed the requirements of a job, or having become familiar with how the job is performed otherwise.

(R. 52). In a case recently before this Court, Pifer v. Astrue, 2:09cv63, 2011 WL 197914 (N.D.W.Va. 2011), Chief United States District Judge John Preston Bailey adopted the Report and Recommendation of the United States Magistrate Judge which provided:

> Ruling 00-4p is satisfied "'by the ALJ simply asking the VE if his testimony is consistent with the DOT'" *Street v. Commissioner of Social Sec.*, 2010 WL 13476205 (E.D.Mich.2010)(citing *Martin v. Comm'r of Social Sec.*, 170 Fed. Appx. 369, 374-75 (6th Cir. 2006)). If the ALJ asks the VE if a conflict exists and the VE denies, the ALJ's duty ends. *Martin*, 170 Fed. Appx. at 374; *see also*, *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009)(stating that "SSR 00-4p requires the ALJ to obtain an explanation only when the conflict between the DOT and the VE's testimony is 'apparent'."). The claimant may bring the VE's mistake to the ALJ's attention, but "[n]othing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct." *Id*. (finding that "[b]ecause [the claimant] did not bring the conflict to the attention of the ALJ, the ALJ did not need to explain how the conflict was resolved.").

Pifer v. Astrue, 2:09cv63, 2010 WL 5621329 (N.D.W.Va. 2010).

Here, the ALJ satisfied his duty under 00-4p by asking the VE if any of his testimony was inconsistent with the DOT. The VE responded that, except for the sit/stand option, which is not addressed in the DOT, his testimony was consistent with the DOT. Further, there was no apparent inconsistency. Finally, Plaintiff did not bring any conflict to the ALJ's attention. As in Pifer, the undersigned finds "the ALJ was not under a duty to elicit a reasonable explanation for a nonexistent conflict to support a determination of 'not disabled.' Id. (citing Terry, supra).

Notably, Plaintiff did not bring any inconsistencies to the attention of the Appeals Council, further evidencing that if there were any inconsistencies they were not apparent.

Additionally, addressing only the first job identified, that of office helper, the undersigned

11

finds there is no actual inconsistency between the job and the DOT, and further finds that job alone exists in significant numbers in the national economy. That job alone therefore substantially supports the ALJ's determination that Plaintiff was not disabled.

Plaintiff argues that the job of office helper, DOT number 239.567-010 would require more than limited contact with the public, coworkers and supervisors. Plaintiff supports this claim by noting that the ALJ had already found Plaintiff could not perform her past relevant work as a fast food worker because this required "more than occasional" contact with coworkers and the public. Plaintiff then contends that the job of office helper actually requires at least as much if not more personal interaction as the fast food worker job because the fast food worker job has a lower "People" number in the DOT than the office worker job.

The undersigned finds Plaintiff has misinterpreted the information as relating to interaction with people. Appendix B of the Dictionary of Occupational Titles describes the "Data, People and Things" listings, stating that the fourth, fifth and sixth digits of the occupational code reflect relationships to Data, People, and Things, respectively, by identifying the highest appropriate function in each listing. The table for "People" is as follows:

    0 Mentoring
    1 Negotiating
    2 Instructing
    3 Supervising
    4 Diverting
    5 Persuading
    6 Speaking-Signalling
    7 Serving
    8 Taking Instructions-Helping.

The numbers do not reflect the frequency of contact with people, but only the "type" of contact. For example, the undersigned finds it completely possible that the function of "Diverting: Amusing

12

others, usually through the medium of stage, screen, television, or radio," at 4, could, in certain jobs, require far less actual contact with people than the job of "Taking Instruction – Helping: Attending to the work assignment instructions or orders of supervisor" at 8. In the present case, the ALJ determined that Plaintiff's job as a fast food worker, required "<u>more than occasional </u>contact with the general public and coworkers," a description of <u>frequency</u>, <u>not type </u>of contact. The hypothetical to the VE used the words "limited contact." The undersigned finds no inconsistency between either of those limitations and the job of office worker, as identified by the expert. Even assuming, *arguendo*, Plaintiff's interpretation of the numbering system in the DOT were correct, Appendix B explicitly cautions:

> As each of the relationships to People represents a wide range of complexity, resulting in considerable overlap among occupations, their arrangement is somewhat arbitrary and can be considered a hierarchy only in the most general sense.

Significantly, the VE testified later in the hearing: "In the jobs that I presented, the person typically is working pretty much alone, and the issues of supervision and dealing with coworkers is reduced, although not totally eliminated" (R. 54). This testimony by the expert additionally supports a finding that there was no inconsistency between the job and the ALJ's limitation on contact.

For all the above reasons, the undersigned finds substantial evidence supports the ALJ's reliance on the VE's testimony in response to the hypothetical as to the office helper job.

The VE testified there would be 127 office helper jobs in the local economy and 162, 282 such jobs in the national economy. In <u>Hicks v. Califano</u>, 600 F.2d 1048 (4th Cir. 1979), the Fourth Circuit stated: "We do not think that the approximately 110 jobs testified to by the vocational expert constitute an insignificant number." <u>Id.</u> at fn2. <u>See</u> <u>also</u> <u>Koonce v. Apfel</u>, 166 F.3d 1209 (4th Cir.

13

1999)(unpublished); Hyatt v. Apfel, 153 F.3d 720 (4th Cir. 1998)(unpublished)("We previously have found that as few as 110 jobs constitute a significant number.").

The undersigned finds, based on the office helper job alone, substantial evidence supports the ALJ's determination that a significant number of jobs existed in the national economy that Plaintiff could perform, and that she is therefore not disabled. The undersigned does not therefore address Plaintiff's other contentions, regarding her ability to perform the private mail clerk or sewing machine operator jobs. The undersigned does again note the VE identified a number of jobs at the sedentary exertional level in response to the ALJ's hypothetical. If someone can do light work, we determine that he or she can also do sedentary work.

## V. RECOMMENDED DECISION

For the reasons above stated, I find that the Commissioner's decision denying the Plaintiff's application for Supplemental Security Income is supported by substantial evidence, and I accordingly recommend that the Defendant's Motion for Summary Judgment be **GRANTED,** and the Plaintiff's Motion for Summary Judgment be **DENIED** and this matter be dismissed and stricken from the Court's docket.

Any party may, within fourteen (14) days after being served with a copy of this Recommendation for Disposition, file with the Clerk of the Court written objections identifying the portions of the Proposed Findings of Fact and Recommendation for Disposition to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to the Proposed Findings of Fact and Recommendation for Disposition set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such proposed findings and

recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 25th day of February, 2011.

s/ *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE